UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

POLLY A. SMITH,                          No. 2:06-cv-02881-MCE-GGH

          Plaintiff,

     v.                                  <u>MEMORANDUM AND ORDER</u>

UNUM LIFE INSURANCE COMPANY OF
AMERICA; CHEVRON TEXACO
CORPORATION EMPLOYEE WELFARE
BENEFIT PLAN,

          Defendants.


                         ----oo0oo----


     Plaintiff, Polly A. Smith, brought suit against Defendants
UNUM Life Insurance Company of America and Chevron Texaco
(collectively referred to as "Defendants") alleging unlawful
denial of disability benefits.  This Court dismissed the case for
failure to comply with Fed. R. Civ. P. 4(m) and Local
Rule 4-210(b), and for failure to file a Joint Status Report and
a Response to an Order to Show Cause.
///

1

Presently before the Court is Plaintiff's motion to re-open the case pursuant to Fed. R. Civ. P. 60.[1]  For the reasons set forth below, Plaintiff's motion, made some three and-a-half years after the matter was originally dismissed, is DENIED.[2]

**BACKGROUND**

The facts of the case are undisputed.[3]  Plaintiff worked for Chevron Texaco Corporation in California for nineteen years as a fire security specialist.

In 1987 while fighting a fire, Plaintiff was injured.  As a result of the injury, Plaintiff became disabled and was reassigned to a job as a communication specialist where she remained until March 2003.

In or around March 2003, Plaintiff's physician determined that Plaintiff was permanently and totally disabled.  Chevron Texaco provided Plaintiff with short-term disability coverage through UNUM Insurance Company of America (UNUM).

After the short-term plan expired, Plaintiff applied for long-term disability.  In or around December 2004, UNUM sent Plaintiff a letter denying Plaintiff's request.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(h).

[3] Unless otherwise stated, the alleged facts are taken from Plaintiff's Complaint.

1    Shortly thereafter, Plaintiff retained attorney Sara Ray to

2  file a complaint.  After sending Ray a retainer and signed

3  authorization, Plaintiff did not hear from Ray for several

4  months.  Plaintiff called for an update, at which point Ray

5  stated she was preparing the complaint.  A month later, Plaintiff

6  again contacted Ray for an update.  Ray told Plaintiff she filed

7  the complaint. Plaintiff later found out that, in fact, Ray had

8  not filed the complaint at that time.  Court records indicate

9  that Ray did not file the complaint until December 2006.  It is

10 unclear from the record, however, when Ray falsely told the

11 Plaintiff she had filed the complaint.

12   Plaintiff then started a pattern of calling Ray once a

13 month.  Ray generally assured Plaintiff that the case was on

14 track and that they were waiting to hear back from the court.

15 Ray, however, did not attempt to solicit information or

16 additional facts from the Plaintiff.

17   In or around March 2007, having grown tired of the lack of

18 information, Plaintiff asked Ray to explain the details of the

19 case and how much she was suing for.  Ray explained that they

20 were still waiting to hear back from the court, and that they

21 would talk "dollars and cents" at a later time.  Plaintiff

22 continued her pattern of calling once a month.

23   In or around July 2008, Plaintiff moved to Tennessee to be

24 closer to family because of health concerns.  By that time, Ray

25 had stopped returning Plaintiff's phone calls.  Plaintiff decided

26 to contact Ray's law partner, Mr. Altman.  Mr. Altman, however,

27 told Plaintiff he could not speak about the case.

28 ///

3

1  Plaintiff asked a friend of hers to contact Ray.  Her friend
2  called Ray from her work number and Ray answered the phone.  Ray
3  explained that the case was on track and that she would call
4  Plaintiff in a few days.  Ray then called Plaintiff and assured
5  her everything was fine.

6  At that point, Plaintiff states that she "was not very
7  confident."  So she asked Ray to send her the documents filed
8  with the court regarding her case.  Ray agreed.

9  Several months passed, and Plaintiff had not received the
10  documents she requested.  Plaintiff's friends and family advised
11  her to seek another attorney.  Plaintiff refused, however,
12  because she did not want to start all over, and living in another
13  state she felt it would make it "extremely difficult" to start
14  over. Plaintiff decided not to fire Ray.

15  A year or more later, Plaintiff still had not received the
16  documents she requested.  In or about July 2009, Plaintiff called
17  Ray for a follow-up, but Ray did not respond.  In September 2009,
18  Plaintiff sent Ray an email reminding Ray that she had not sent
19  the documents as promised.

20  In November 2009, Ray finally responded by sending Plaintiff
21  copies of the filed documents.  Upon receipt, however, Plaintiff
22  became concerned because the documents did not accurately portray
23  the facts of the case.  Plaintiff then sent several emails to Ray
24  expressing her concern, but Ray did not respond.  Plaintiff then
25  started calling on a regular basis, leaving voice mails asking
26  Ray to call her.

27  ///
28  ///

4

1    Ray did not respond until June 2010, explaining she was on
2    jury duty.  Ray told Plaintiff she would contact her the
3    following week.  Ray, however, did not call.

4        In August 2010, Plaintiff contacted attorney Clara Reno, an
5    attorney assisting Plaintiff with bankruptcy proceedings, and
6    asked her what she should do regarding Ray.  Reno suggested
7    sending a certified letter asking for a status of the case and
8    copies of all documents filed with the court.  Plaintiff did so,
9    but the letter came back undelivered.  Thereafter, Plaintiff
10   again tried to contact Ray through phone calls and emails, but
11   with no success.

12       In February 2011, Plaintiff tried calling again, but this
13   time Ray's phone had been disconnected.  Plaintiff asked attorney
14   Reno what she should do.  Reno advised her to call the California
15   State Bar.  Upon doing so, Plaintiff learned that Ray had been
16   disbarred as of October 2010.

17       Plaintiff then called this Court to determine the status of
18   her case.  She learned that her case had been dismissed on
19   September 27, 2007, after Ray had failed to appear pursuant to an
20   Order to Show Cause issued after she failed to either timely
21   effectuate service on Defendants or file the required Joint
22   Status Report.

23       Plaintiff then brought this motion to re-open her case.
24   ///
25   ///
26   ///
27   ///
28   ///

1

2

**ANALYSIS**

3      Of relevance to the issue in this case is Fed. R. Civ. P.

4  § 60(b), which allows the court to relieve a party or its legal

5  representative from a final judgment, order, or proceeding for,

6  among other enumerated reasons "(6) any [] reason that justifies

7  relief."  Rule 60(b)(6) is the "catch-all" clause "intended to

8  encompass errors or actions beyond the petitioner's control."

9  Community Dental Services v. Tani, 282 F.3d 1164, n. 8 and n. 11

10  (9th Cir. 2001).  Any motion under Rule 60(b)(6) must be brought

11  "within a reasonable time."  See Fed. R. Civ. P. § 60(c).

12      Courts use Rule 60(b)(6) "sparingly as an equitable remedy

13  to prevent manifest injustice."  United States v. Alpine Land &

14  Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).  To receive

15  relief under Rule 60(b)(6), a party must demonstrate

16  "extraordinary circumstances which prevented or rendered him

17  unable to prosecute [his case]."  Community Dental Services v.

18  Tani, 282 F.3d 1164, 1168 (citing Martella v. Marine Cooks &

19  Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam));

20  see also Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010)

21  (reciting rule above).  An attorney's gross negligence

22  constitutes such extraordinary circumstances, and is properly

23  brought under Rule 60(b)(6).  See id. at 524 (an attorney's gross

24  negligence resulting in dismissal with prejudice for failure to

25  prosecute constitutes an "extraordinary circumstance" under

26  Rule 60(b)(6) warranting relief from judgment).

27  ///

28  ///

6

1    In <u>Lal v. California</u>, Shelly Lal brought suit against the

2  California Highway Patrol for the shooting death of her husband.

3  <u>Lal</u>, 610 F.3d at 520.  The district court dismissed her case

4  under Fed. R. Civ. P. 41(b) for failure to prosecute when her

5  attorney failed to meet deadlines and attend meetings.  <u>Id.</u> at

6  521.  The plaintiff was unaware that her case had been dismissed.

7  When Lal later learned of her attorney's behavior and the

8  dismissal of her suit, she hired another attorney and filed a

9  motion for relief pursuant to Rule 60(b)(6).  <u>Id.</u> at 522-23.  The

10  district court denied her motion.  On appeal, the Ninth Circuit

11  reversed.  <u>Id.</u> at 521.  It reasoned that the behavior of Lal's

12  attorney Chesterfield Spahr constituted gross negligence.  <u>Id.</u> at

13  525.  The court noted that Spahr

14          failed to make initial Rule 26 disclosures after being
          ordered to do so; failed to meet, confer, and
15          participate in the joint case management conference
          after being ordered to do so; and failed to attend
16          hearings... Spahr continued to tell Lal that her case
          was moving forward even after it had been dismissed...
17          Spahr repeatedly assured Lal that he would give her
          copies of all of the documents he falsely claimed to
18          have filed in her case.

19  <u>Id.</u> at 525-26.

20    The plaintiff in <u>Lal</u>, although duped and kept in the dark by

21  her attorney's behavior for a period of time, did not sit idle

22  when her attorney's deceit became obvious.  When Spahr stopped

23  responding to the plaintiff's phone calls and failed to show up

24  to a conference call scheduled with the plaintiff, the plaintiff

25  decided to seek the opinion of another attorney.  <u>Id.</u> at 522.

26  ///

27  ///

28  ///

1   She learned then that her case had been dismissed ten months
2   earlier.  Plaintiff immediately took steps to find another
3   attorney and promptly brought suit to re-open her case.  Id. at
4   522-23.

5        Under these circumstances, the court held that gross
6   negligence existed and that the plaintiff demonstrated
7   "extraordinary circumstances beyond her control" that merited
8   relief under Rule 60(b)(6).  Lal, 610 F.3d at 526.

9        With respect to the issue of gross negligence as it pertains
10  to the facts of this case, the Court agrees with Plaintiff that
11  attorney Ray's behavior was egregious and would likely rise to
12  the level of gross negligence.  Like the attorney in Lal,
13  Plaintiff's attorney Sara Ray failed to show up to Court when
14  ordered to do so, led Plaintiff to believe she had filed her
15  claim when she actually had not done so, failed to contact or
16  follow-up with Plaintiff about Plaintiff's case, and deliberately
17  misled Plaintiff into believing her claim was pending when in
18  fact Plaintiff's claim had been dismissed.  This Court would not
19  find it hard to hold Ray's acts constituted gross negligence.

20       Gross negligence alone, however, is not enough to grant
21  relief.  The Plaintiff must also demonstrate that the gross
22  negligence constituted an extraordinary circumstance "beyond her
23  control."  See Lal, 610 F.3d at 526; see also Tani, supra,
24  282 F.3d at 1171.  Additionally, Rule 60(b)(6) motions must be
25  brought within a reasonable time.  See Fed R. Civ. P. § 60(c).
26  The Plaintiff here has not made a showing that the circumstances
27  were out of her control, or that her motion was brought within a
28  reasonable time.

Unlike the Plaintiff in Lal who took action immediately upon suspicion that her original attorney was not representing her properly, the Plaintiff here chose not to take action even when her attorney's egregious behavior was blatantly obvious.

The Court does not fault the Plaintiff's inaction early on in the lawsuit. Indeed, between 2005 and mid-2008, attorney Ray intentionally deceived the Plaintiff by assuring the Plaintiff that her case was on track, lying about when the claim was filed, and most egregious of all, failing to tell the client that her case had been dismissed in September 2007.

However, by July 2008, attorney Ray's behavior became obvious to the Plaintiff and to those around her. For instance, Plaintiff states that Ray had stopped calling. Ray's failure to return calls prompted Plaintiff to call Ray's partner for answers. Ray's partner declined to comment, so Plaintiff asked one of her friends to call Ray directly for an update on her case. Unsurprisingly, Ray answered the call from the friend, likely because she did not recognize the phone number. Only after being caught answering the phone did Ray decide to call the Plaintiff back. At this point, Plaintiff admits she "was not very confident." Plaintiff's friends and family even advised Plaintiff to seek another attorney. By all accounts, the Plaintiff, at this juncture in the time line of events, was aware that she was not receiving proper representation. It is the opinion of this Court that the Plaintiff should have sought the help of a second attorney at this point, or at the very least, proceeded proactively to address Ray's behavior and the lack of representation.

It was not enough that Plaintiff proceeded by asking Ray to send her the filed court documents in her case and wait for a response.

But even if a reasonable person would have proceeded as the Plaintiff did in this case, nothing excuses Plaintiff's inaction for an entire year or more while she waited to receive the requested documents.  According to the Plaintiff, Plaintiff requested the documents from Ray around July 2008.  Despite phone calls and emails, Ray did not provide the documents until sometime around November 2009.  And even then, the filed documents did not accurately portray the facts of her case. Thus, even if it was reasonable for Plaintiff to give Ray another chance after Ray regularly failed to respond to Plaintiff's phone calls through July 2008, Ray's subsequent behavior and inaction with respect to the requested documents should have prompted Plaintiff to fire Ray and hire another attorney.  However, Plaintiff did not fire her attorney or take responsibility for her case.  She waited until February 2011, when she discovered Ray's phone was disconnected, to finally take action.

Although the court is sympathetic to the Plaintiff's situation -- having been duped and misled by an attorney whom she trusted -- the Court cannot ignore the poor choices the Plaintiff made with respect to how she handled her attorney's obvious improper behavior.  Accordingly, taking responsibility for her case was not beyond Plaintiff's control.  Having failed to take such remedial action, Plaintiff also failed to bring her Rule 60(b) motion within a reasonable time pursuant Fed R. Civ. P. § 60 subsection (c).

That motion was not brought until March 28, 2011, more than three and-a-half years after the Court dismissed Plaintiff's complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for relief (ECF No. 9) under Fed. R. Civ. P. § 60(b) is DENIED.

IT IS SO ORDERED.

Dated: November 22, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

11